UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

JASON MICHAEL MUSGROVE,
　　Petitioner,
v.
UNITED STATES OF AMERICA,
　　Respondent.

CV 122-008
(Formerly CR 120-012)

### PETITIONER'S RESPONSE TO GOVERNMENT'S MOTION TO DISMISS

**Timeliness of Response.** Petitioner received the Government's motion to dismiss on April 19, 2022. No instructions to the petitioner requiring or requesting a response were attached and none arrived separately. On May 13, 2022, Petitioner received an order from the court dated May 3, 2022. This order instructed petitioner to file a response within fourteen days (no later than May 17, 2022). Petitioner is filing this response under a severely limited timeline since only three useable days remain. Federal Correctional Complex Butner does not recognize incoming mail from the courts as official legal mail nor as time sensitive, contributing to the long delay in receiving the court's order.

**Preface.** Petitioner is a pro se litigant with no legal education or training who had never occupied a criminal courtroom for any reason prior to this case. The court's instructions for filing a motion under 28 USC §2255 preclude petitioner from arguing or citing caselaw. Furthermore, Petitioner is currently confined to FBOP custody in

a facility still subject to restricted movement as a result of COVID-19, which places further limitations on Petitioner's ability to conduct proper research and to use typing/copying facilities. These facts place Petitioner in a position of clear disadvantage compared to Respondent. Petitioner asks the court to give considerable weight to Petitioner's situation and to liberally construe the contents of this and all other submissions from Petitioner.

Petitioner will respond to the Government's motion to dismiss using the same outline structure contained in Government's motion, except that Petitioner will add a section to discuss any portions of Petitioner's §2255 motion which were not specifically addressed by Government's motion to dismiss.

## Background

While it is possible Chief Judge Hall could have run the sentence for each count of the indictment consecutively, the Government showed no example of a similar case and precedent shows this result to be extremely unlikely (See §2255 Motion; pages 8, 11, and 28). Also, Exhibit B

While the petitioner's only specific request is for resentencing, his original motion and his response to the Government's motion to bifurcate its response makes clear the Petitioner's desire to receive any relief to which the court should find him entitled. This includes invalidating the plea agreement and dismissing all charges.

2

## Argument

Musgrove is entitled to relief. He makes several cogent and valid constitutional arguments as well as claims of ineffective assistance of counsel.

### I. Inefftive Assistance of Cansel.

Petitioner cannot say for certain what would have happened had his attorney provided proper, accurate legal advice. To expect anyone to do so is ridiculous. Petitioner can, and does, assert that if he were presented with the same plea agreement today — knowing what he now knows about federal legal procedures — he would not accept the plea. If a better agreement could not be reached, Musgrove would proceed to trial.

### A. Guilty Plea.

1. Had Mr. Saul thoroughly and accurately explained the elements of the crime, Petitioner would have insisted on thorough review of all evidence on record. It is highly likely the review would result in many of the photos being deemed not sexually explicit, even given the vastly expanded judicial definition of the term.

The image to which the prosecutor refers contains no nudity. The angle of the camera shows mostly the top of the head and shoulders.

Petitioner never planned to drug or rape his daughter, nor did he desire to watch anyone else do so. Aside from fantasy chat comments, the prosecutor shows no evidence to support

3

this claim. Those fantasy chat comments should not be taken as statements of fact. They were made by a fictitious character played by Musgrove. This fictitious character made all sorts of wild and crazy comments, since his character traits made him a man with no limits to his sexual behavior. In contrast, Mr. Musgrove was a quite different person. Mr. Musgrove is not now and has never been a pedophile, and he has engaged in very few of the activities the fictitious character proclaims to have done. Unless the prosecutor can show evidence to suggest Mr. Musgrove has indeed made concrete plans to perpetrate any of the wild claims made by the character, the comments should be treated as protected free speech. Though they are shocking and disgusting, these comments are fantasy ideas expressed by a made-up character in a phone application chat group.

2. Petitioner cannot be expected to know exactly what would have happened if his attorney had reviewed the evidence. What is clear is that the evidence was not reviewed and that the failure to review led to Counsel's inability to speak to the content of the evidence. Defense Counsel relied on the Prosecutor's description of the evidence to determine if it met legal standards for conviction. The two reasons for not reviewing the photos were:
   i) Counsel gave unclear, incomplete, and inaccurate advice about the legal definition of child pornography, and
   ii) Counsel had a clearly-stated conflict of interests.

4

3. By misrepresenting the effect of advancing arguments or attempting to negotiate a more favorable plea agreement, Counsel created an environment in which Musgrove felt he had no choice but to accept the first and only plea agreement offered. To do otherwise would be to incur the wrath of the prosecutor and the court. The reality, as shown in the JSIN database and the cases cited in Petitioner's Exhibit B, is that Musgrove probably could have negotiated a better plea agreement and may have even gotten a lighter sentence by proceeding to trial. If Petitioner were facing this decision today, in light of his better understanding of the process, he would proceed to trial.

The "many arguments" were made throughout the original motion. Namely, the court lacked jurisdiction because the statute of conviction contains a jurisdictional clause which is so broad as to completely dissolve any jurisdictional limitations, the evidence was insufficient to convict because the photos did not represent a "lascivious exhibition", and the 4B1.5 enhancement should not apply because the petitioner is not a repeat and dangerous offender and it unreasonably effects the sentence range without due process.

4. Mr. Saul denied the existence of 11(c)(1)(C) plea agreements with negotiated sentence lengths. This was absolutely false.

Petitioner cannot be expected to prove that the prosecutor would have offered such a plea, nor that the judge would have accepted it. To require Petitioner to predict these outcomes is ridiculous. However, Petitioner can show that other cases in this district have used this type of plea: See US v. Dias, CR618-014, July 28, 2020;

US v. Caldwell, CR117-066, Sept. 23, 2019; US v. Reality Winner, CR117-034, April 27, 2018.

The court was able to "round all those bases" of Fed. R. Crim. P. 11 because at the time of the hearing Musgrove was ignorant of the facts of the plea procedure, legal precedent, and many other factors (such as sentencing statistics). Musgrove's answers to the court's questions were based on his flawed understanding of the situation, which directly flowed from Counsel's inaccurate, incomplete, and often purposely misleading advice. Now that Musgrove has been afforded the opportunity to research the statutes and rules governing his case, he would answer quite differently. Counsel's behavior constitutes an effective coercion.

5. Petitioner reiterates all points from 4.
6. Although Musgrove discussed his desire to plead guilty and accept responsibility, he never intended to plead guilty to something he did not do. He also believed pleading guilty early would lead to a substantially reduced sentence. Once Musgrove pleaded guilty, the prosecutor was able to make inaccurate and exagerated statements without objection. These statements prejudiced the court and were echoed by Chief Judge Hall during sentencing.

After researching the law, Petitioner believes he was charged under an unconstitutional statute and that the evidence against him is insufficient for conviction. Musgrove also contends that while he lodged no objections at the sentencing hearing, his decisions at the time were all clouded by his attorney's inaccurate,

incomplete, and often invalid legal advice. One cannot know for certain that he is happy with his counsel if he has no other information on which to base this happiness than Counsel's own words.

B. Sentencing.
1. Musgrove does not suggest eviscerating the USSG guidelines, nor does he suggest Mr. Saul should have predicted future legal advancements. Musgrove suggests that the USSG sentence range table does not match up with the guidelines chapters and that an attorney who is adequately striving to represent his client should have informed the court of this fact. Counsel should also reasonably be expected to know of the myriad cases in which judges, attorneys, law professors, and the guidelines commission members state in no uncertain terms that disparity is easy to achieve in child pornography cases.

Mr. Saul certainly should have noticed that his client's specific guideline calculation was considerably high mostly due to the 4B1.5 enhancement, and it is not a stretch to find multiple inconsistencies in the wording, implementation, interpretation, and sentencing of sex crimes versus other crimes. For example, though Chief Judge Hall stated that child pornography charges were second only to murder, the statutory language and implementation seems to suggest that the courts hold child pornography as worse than murder. The federal murder statute's jurisdiction clause is extremely limited comparatively. Attempted murder is a completely separate statute with lighter sentencing guidelines. Also, murder has

7

multiple degrees that further delineate different instances. Finally, there are other federal statutes such as manslaughter which can be used to describe lesser versions of actions leading to death. In contrast, there is only one federal statute for a case of an adult photographing a minor. Attempts are held equal to actual photographs. There is no distinction between a non-nude (but somehow sexually explicit) photo and a photo involving penetration. Instead, any violation is differentiated only by minor (usually) enhancements. The one major enhancement option (which essentially doubles the sentencing range) is the 4B1.5 career criminal enhancement. The only career enhancement which does not require prior conviction for application. It seems the federal government would rather one attempt to kill a teenager than attempt to photograph her.

2. It makes no sense to describe the conduct in this case as "some of the most egregious...". This judgment is made almost exclusively in response to the fantasy chat room conversations presented by the prosecutor as admissions of a conspiracy to commit rape on the part of the defendant. If those comments were treated as the protected free speech that they are, it would be evident that the actual conduct in this case is in the median range at worst. (See §2255 Motion, Ground One, Supporting Fact (2)).

3. Mr. Saul made no formal – that is, written – motion for downward variance and failed to describe all the qualifying reasons for one. It is Petitioner's understanding that a written motion carries greater weight and affords greater opportunity for appeal than does a verbal request made during the sentencing hearing. Had counsel prepared a formal motion, he would likely have

included many of the reasons suggested by Petitioner in his motion and would probably have a better chance of success. The JSIN statistics show that 59% of similarly situated defendants received a downward variance between FY16 and FY20.

4. Prosecutor spoke at length and was allowed to make inaccurate and exagerated statements which were then repeated by Chief Judge Hall in his written reasons for giving the maximum sentence.

5. It is impossible to know what a psychologist would have found if Counsel had requested an evaluation, nor to predict the effect these findings would have on the outcome of the case. It is certain that in other cases defendants who have shown diagnoses of PTSD or addictions (mainly drug addiction) have been awarded downward variances. Musgrove has served three combat tours in the Army and could very well have an undiagnosed psychological condition stemming from that service. Musgrove is quite certain now that he suffered from a serious addiction to pornography that started in his teens and continued until his arrest. Also, there is history of psychological issues in Musgrove's family. Had Mr. Saul insisted on an evaluation, it is highly possible at least one additional reason for downward variance would have resulted. Finally, Musgrove could have benefitted from a medical determination that he is not a pedophile.

6. Prosecutor's claim that victimizing teen girls is worse than victimizing younger girls directly contradicts the sentencing guidelines. Furthermore, though Petitioner is ultimately responsible, if Prosecutor truly feels it is so egregious to victimize MV 2, 3, and 4, why did she involve them at all? The photos were already in evidence, and Petitioner had already confessed to FBI agents. There was no need to make these girls aware of the isolated incident. Had they not been notified by the prosecutor, they could have lived perfectly normal, non-victim lives. They could have provided support to the main victim in the case instead of having a strained relationship with her due to the revelation. Again, the evidence in this case showed no other activity with these victims beyond the single incident which took place a year prior to Musgrove's arrest. Musgrove is ultimately responsible for their victimization, but the actual damage did not occur until the prosecutor made the decision to bring these three ladies into the case. The greater good would have been served by not revealing their victimization — the prosecutor still had sufficient evidence to convict on attempted production charges (according to prosecutor's stated burden of proof).

Any further egregiousness (aside from the age of victim discussion) is based on what should be protected free speech fantasy chats.

7. Petitioner contends that stating the objection for the record carries more weight and ensures appealability.

8. The witness was a lay-clergyman who would have spoken to the remorse, repentance, and rebirth of the Petitioner. In US v. DeShon, 1999 US App. Lexis 11787, spiritual renewal leading to

10

a significant level of rehabilitation was held to be a valid reason for downward variance. Mr. Saul's inaction deprived Petitioner of this potentially powerful testimony.

C. Conflicts of Interest.

1. Regardless of the attorney's ability to maintain a caseload of paying customers, the faster he disposes of an appointed client, the sooner he can gain another. Steadily leading clients to early plea agreements leads to steady income, and the longer the attorney works on an appointed case, the fewer cases he can carry.

2. Counsel may be paid more if he can justify "extended or complex representation". Given the level of representation provided in this case, it is doubtful Mr. Saul could justify the extra cost.

3. Mr. Saul's failure to view the material made him incapable of providing sound legal advice. He could not know whether or not the images met the statutory requirements to be considered child pornography or to what degree an argument could be raised against it. Therefore, he could not negotiate a more beneficial plea agreement or provide adequate advice should Petitioner choose to go to trial. His lack of action makes it impossible for us at this point to know what might have otherwise taken place.

II. Affirmative Defenses.

A. Guilty Plea. Musgrove's guilty plea was essentially coerced based on the cumulative effect of Counsel's multiple instances of misleading or false legal advice and his overall ineffectiveness. Musgrove does seek to invalidate his conviction, and he advances numerous constitutional and other claims to this effect.

B. Procedural Default. Petitioner did not file an appeal because he was told this was futile given his guilty plea and because he was ignorant of the truth concerning his attorney's misrepresentations of the law and legal procedures. Musgrove was effectively coerced into signing the plea agreement which included what Counsel called "boiler plate" waivers. Mr. Saul categorically denied the existence of 11(c)(1)(C) agreements with negotiated sentence lengths and claimed any challenge to the given terms would be met with a lengthier sentence through loss of acceptance of responsibility. Since he refused to show Musgrove a sentence range calculation, Musgrove was unaware that acceptance of responsibility had a marginal effect in this case.
Petitioner asserts that the statute of conviction in this case is unconstitutional due to an unlimited jurisdictional clause which violates the intent of Article I. As such, the 11th Circuit lacks jurisdiction to try Musgrove on this charge.
Petitioner also asserts that none of the content he produced rises to the level of child pornography as described in 18 USC §2256.

C. Collateral Attack Waiver. Petitioner had no idea what a collateral attack was, nor did he understand the effect of this waiver. Musgrove signed the plea agreement because his attorney said it was the best course of action. Petitioner stands by his claims of ineffective assistance and believes they do have merit.

III. Claims Insufficiently Addressed by Government.

A. The Government made no mention of Petitioner's claim that restitutions were potentially unauthorized and possibly not properly calculated. Petitioner assumes lack of response is equivalent to agreement with his claim. (See §2255 Motion, Ground One, Supporting Fact (1), section (D); pages 3-4).

B. The Government summarily dismisses all of Ground Three due to waivers in the plea agreement. Petitioner has advanced several valid arguments which should be carefully considered by the court.

C. The Government summarily dismisses all of Ground Four due to waivers in the plea agreement. Of significant note here is Petitioner's belief that his Article I claim against 18 USC§2251 is significantly different than those previously heard by the court. Musgrove's attack focuses on the limitless federal jurisdiction produced by the language "using any item which has been transported in interstate commerce". It is not possible to think of a scenario in which a

13

defendant would not meet this jurisdictional requirement. Therefore, the statute expands federal jurisdiction in production cases to everywhere, all the time, for any defendant. This clearly violates the intent of Congress's limited authority granted in Article I.

## Conclusion

This court should deny the Government's motion to dismiss and consider all the arguments advanced in Petitioner's motion under 28 USC §2255.

Should the court find it necessary to hold an evidentiary hearing, Petitioner requests appointment of Counsel to represent him at the hearing. To the extent possible, Petitioner requests the use of telephone or video teleconferencing to reduce public health and financial hardship challenges.

I declare under penalty of perjury that the foregoing is true and correct and that this Response to Government's Motion to Dismiss was placed in the prison mail system on May 16, 2022.

A copy of this motion was mailed to the U.S. Attorney's office at:
PO Box 8970 Savannah, GA 31412

Executed on May 16, 2022.

*Jason M. Musgrove*
Jason M. Musgrove
23386-021
Petitioner

FCI 2 Unit MC
PO Box 1500
Butner, NC 27509

14

Name: Jason Musgrove   Number: 23386-021
Federal Correctional Institution 2
P.O. Box 1500   MC
Butner, NC 27509

Legal Mail
Time Sensitive



RALEIGH NC 275
Research Triangle Region
17 MAY 2022 PM 1  L

United States District Court
Southern District of Georgia
Attn: Case CV 122-008
600 James Brown Blvd.
Augusta, GA 30901

30901-235125