IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

JASON MICHAEL MUSGROVE,          )
                                 )
          Petitioner,            )
                                 )
     v.                          )          CV 122-008
                                 )            (Formerly CR 120-012)
UNITED STATES OF AMERICA,        )
                                 )
          Respondent.            )

_____

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
_____

Petitioner, an inmate at FCI Butner Medium II, has filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. This case is now before the Court on Respondent's motion to dismiss. (Doc. no. 8.) For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Respondent's motion to dismiss be **GRANTED**, (doc. no. 8), Petitioner's § 2255 motion be **DISMISSED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

## I.     BACKGROUND

### A.     Charges

On January 8, 2020, the grand jury in the Southern District of Georgia charged Petitioner in a six-count indictment with production, attempted production, distribution, and possession of child pornography in violation of 18 U.S.C. §§ 2251(a) and (e) and 2252A(a)(2), (a)(5)(B), and (b). United States v. Musgrove, CR 120-006, doc. no. 1 (S.D. Ga. Jan. 8, 2020) (hereinafter "CR 120-006"). Counts one through five carried a maximum sentence of thirty

years imprisonment each, and count six carried a maximum of twenty years imprisonment. Id., doc. no. 2.  Appointed counsel M. Travis Saul represented Petitioner.  CR 120-006, doc. no. 5.  In line with his plea agreement, Petitioner was charged on March 2, 2020 by information with one count of production of child pornography in violation of 18 U.S.C. § 2251(a), which carried a maximum sentence of thirty years imprisonment.  United States v. Musgrove, CR 120-012, doc. nos. 2, 3 (S.D. Ga. Mar. 3, 2020) (hereinafter "CR 120-012").

**B.    Agreement to Plead Guilty**

On September 3, 2020, Petitioner appeared with counsel and pled guilty to production of child pornography.  CR 120-012, doc. nos. 23-25.  In exchange, the government agreed to dismiss the five remaining counts of the indictment.  Id., doc. no. 25, ("Plea Agreement"), p. 5.  The government further agreed to recommend to the U.S. Probation Office that the offense did not involve material portraying an infant or toddler or sadistic or masochistic conduct, as well as not to object to a two-point acceptance of responsibility reduction and move for an additional one-point reduction if Petitioner's offense level was sixteen or greater prior to the acceptance of responsibility reduction.  Id. at 4.

Petitioner's Plea Agreement contained the following factual basis for his guilty plea:

> In or about December 2018, in Columbia County, within the Southern District of Georgia, the defendant, JASON MICHAEL MUSGROVE did knowingly employ and use minor MV1, a minor whose identity is known to the Grand Jury, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct and the visual depiction was produced using materials that were mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer; to wit: an image or video with file name ********Toilet.mp4 depicting MV1 engaging in sexually explicit conduct. All done in violation of Title 18, United States Code, Section 2251(a).

Id. at 2.

By signing the Plea Agreement, Petitioner also "entirely waive[d] his right to a direct

2

appeal of his conviction and sentence on any ground" unless (1) the Court sentenced him above the statutory maximum, (2) the Court sentenced him above the advisory Sentencing Guidelines range, or (3) the government appealed the sentence. Id. at 7. Absent one of the above-mentioned three conditions, "[Petitioner] explicitly and irrevocably instruct[ed] his attorney not to file an appeal." Id. Further, Petitioner waived his right to collaterally attack his conviction and sentence on any ground other than ineffective assistance of counsel. Id.

By signing the Plea Agreement, Petitioner agreed he read and carefully reviewed it with Mr. Saul, understood each provision, voluntarily agreed to it, and "stipulate[d] that the factual basis set out therein is true and accurate in every respect." Id. at 11. Petitioner additionally attested "that his attorney has represented him faithfully, skillfully, and diligently, and [Petitioner] is completely satisfied with the legal advice given and the work performed by his attorney." Id. at 9.

At the change of plea hearing, Chief United States District Judge J. Randal Hall first confirmed no one had threatened or pressured Petitioner into pleading guilty and that he clearly understood where he was and why he was in court. Id., doc. no. 48 ("Rule 11 Tr."), p. 2. Judge Hall reviewed the charges against Petitioner in the indictment, with a particular focus on Count Two, to which the guilty plea applied, as well as the forfeiture allegation. Id. at 5-6. Petitioner confirmed he had as much time as he needed to review the charges with Mr. Saul. Id. at 6. Petitioner also testified under oath he was satisfied with Mr. Saul's assistance, and he had read and reviewed the Plea Agreement with counsel before signing it. Id. at 7, 9.

Judge Hall also explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed he clearly understood those rights. Id. at 7-9. Among the rights explained, Judge Hall reviewed the right to trial by jury, the presumption of innocence, the

government's burden to prove guilt beyond a reasonable doubt, the right to present and cross-examine witnesses, and the right to remain silent.  Id.  Judge Hall confirmed that, other than the Plea Agreement, no one on behalf of the government had promised anything to procure the guilty plea.  Id. at 10.

Judge Hall reviewed the statutory penalty of a sentence up to thirty years in prison.  Id. at 12.  When asked, Petitioner confirmed he understood the possible imprisonment penalty, as well as the potential $250,000 fine and lifetime supervision.  Id.  Judge Hall explained Petitioner would be required to register as a sex offender.  Id.  Judge Hall also explained that upon Petitioner's conviction, he would lose the right to vote, hold public office, serve on a jury, and own or possess firearms or ammunition.  Id. at 13.

Judge Hall further explained that upon entry of the guilty plea, he would order the preparation of a Presentence Investigation Report ("PSI"), and Petitioner's sentence would be based on the information in the PSI.  Id. at 13-14.  Judge Hall specifically explained the PSI would calculate an advisory Sentencing Guidelines range, but he could sentence Petitioner within the range, below the range, or above the range.  Id. at 15.  Petitioner had no questions concerning the sentencing process described by Judge Hall and affirmed no one had promised him he would receive a particular sentence.  Id.

Next, Judge Hall heard a factual basis for the guilty plea from Assistant United States Attorney Tara M. Lyons  Id. at 16-17.  On December 4, 2019, an undercover agent with the Federal Bureau of Investigation ("FBI") entered a private group message on the Kik messaging app.  Id. at 18.  A user, determined later to be Petitioner, also joined the group, and, as a condition for joining, submitted two images of a clothed teenage girl and additional images of Petitioner with that girl.  Id.  The undercover agent then observed Petitioner in a second Kik

4

group message posting a nude image of a minor, who has been identified as victim one.  Id.
Over time, Petitioner posted three nude images of victim one in the second Kik group message
and commented on child pornography posted by others in that group.  Id.

On December 5, 2019, Petitioner told the undercover agent, via Kik, he was in the
Army and previously used a small spy camera.  Id.  Petitioner also discussed drugging and
having sex with victim one.  Id.  In response, the undercover agent requested and received
Petitioner's IP information from Kik, which led the FBI to identify Petitioner and learn he was
a major in the Army working in Augusta, Georgia.  Id. at 18-19.

On December 6, 2019, FBI Agent Trip Godbee arrested Petitioner on a criminal
complaint for child pornography.  Id. at 19.  Agent Godbee was able to gain access to
Petitioner's Google Drive account, where he found sexually explicit videos of victim one and
three other minor females.  Id. at 20.  The images were filmed from a hidden camera in a
bathroom at Petitioner's residence in December 2018.  Id.

Petitioner stated to Judge Hall the information provided by AUSA Lyons and
contained in Count One of the information was true.  Id. at 21.  Judge Hall summarized the
proceedings as follows:

> The Court now finds then that [Petitioner] has waived his right to
> indictment and has agreed to proceed today by Information. He is competent
> and fully understands this Count One charge against him. There is a factual basis
> supporting his guilty plea on this charge. He knows the statutory punishment
> that could be imposed upon a conviction of this charge including the statutory
> minimum of incarceration and supervised release. He knows his jury rights
> which he has knowingly and voluntarily waived. His decision to plead guilty to
> this charge this morning was voluntary, knowing, and not as a result of any
> force, pressure, threats or promises other than the promises made by the
> government in the plea agreement; therefore, I find—I now adjudge [Petitioner]
> guilty of count one of the Information based upon his guilty plea.

Id. at 22

### C.      Sentencing

The United States Probation Office prepared a PSI setting Petitioner's Total Offense Level at forty, Criminal History Category at I, and Guidelines imprisonment range at 292 to 360 months.  PSI ¶¶ 45, 48, 75.  Petitioner's offense level included a five-point Chapter Four enhancement pursuant to U.S.S.G. § 4B1.5(b)(1) as Petitioner "engaged in a pattern of activity involving prohibited sexual conduct."  PSI ¶ 43.  Because Petitioner demonstrated acceptance of responsibility and assisted in his own prosecution by timely announcing his intent to plea, his ultimate offense level was forty, reduced by three for acceptance of responsibility pursuant to USSG § 3E1.1(a)-(b).  PSI ¶¶ 43-45.  The statutory maximum term of imprisonment was thirty years.   18 U.S.C. § 2251(a) and (e); PSI ¶ 79.  Petitioner raised no objections to the PSI. Judge Hall adopted the factual statement of the PSI and the application of the advisory Guidelines as his own findings of fact.  CR 120-012, doc. no. 45 ("Sent. Tr."), p. 3.

Judge Hall next heard from Mr. Saul and Petitioner regarding mitigation.  Mr. Saul discussed Petitioner's acceptance of responsibility and lack of criminal record, and emphasized that Petitioner had lost his marriage, family, and military career as a result of this guilty plea. Id. at 5.  Mr. Saul explained Petitioner used a secret camera, meaning the victims were unaware he was filming them, making this case distinguishable from other production cases.  Id.  Mr. Saul further argued Petitioner had quickly resolved the restitution issue by agreeing to pay.  Id. at 7.  Petitioner then addressed the Court, reading a statement describing his Christian faith and expressing shame and remorse to have allowed himself to slip so deeply into pornography. Id. at 8-11.  AUSA Lyons read two victim impact statements.  Id. at 12-23. Judge Hall imposed an imprisonment term of 360 months, which is the highest term of the Guidelines range.  Id. at 25; CR 120-012, doc. nos. 39, 41.  In keeping with the terms of the Plea Agreement,

Petitioner did not file a direct appeal.

### D.    § 2255 Proceedings

Petitioner timely filed the instant § 2255 motion to vacate, set aside, or correct his sentence, raising the following claims:

I.    Counsel provided ineffective assistance throughout the adversarial process.
  (1)    Counsel mislead Petitioner by
      (A)    Telling Petitioner the incorrect definition of sexually explicit;
      (B)    Advising against arguing with the prosecution;
      (C)    Claiming the plea agreements could not contain an agreement on how to sentence Petitioner; and
      (D)    Having Petitioner volunteer to pay restitution.
  (2)    Counsel failed to explain and analyze the United States Sentencing Guidelines ("USSG") calculation process by
      (A)    Failing to provide Petitioner an estimated sentence range;
      (B-E)    Failing to argue against an unreasonable sentence calculation containing anomalies and disparities.
  (3)    Counsel failed to conduct a proper pretrial investigation by
      (A)    Refusing to view the evidence of child pornography; and
      (B)    Not requesting a psychological evaluation of Petitioner.
  (4)    Counsel overall lacked effort by
      (A)    Not conducting plea negotiations;
      (B)    Failing to motion for a downward variance;
      (C)    Barely speaking during sentencing;
      (D)    Not objecting to the government's statements at sentencing;
      (E)    Not objecting when Petitioner received the maximum sentence; and
      (F)    Failing to maintain routine contact with Petitioner and failing to call a clergyman as a witness.

II.    Counsel suffered from conflicts of interest which degraded his ability to perform his duties to an acceptable level.  These include
  (1)    An inherent financial conflict for all appointed counsel;
  (2)    A conflict due to overpayment of counsel by Petitioner; and
  (3)    Personal conflict because counsel would not view the child pornography evidence.

III.    The Court failed to properly balance 18 U.S.C. § 3553(a) sentencing factors when determining the length of incarceration and supervised

release because

    (1)    The Court justified its sentence with inaccurate facts; and

    (2)    The Court failed to consider several sentencing factors.

IV.    Petitioner's conviction and sentence suffered from several constitutional and statutory issues. Specifically

    (1-3)    The laws surrounding child pornography are unconstitutional;

    (4)    The Department of Justice used unfair tactics;

    (5)    Penalties for sex crimes are overly severe and unjustified; and

    (6-7)    Supervised release decisions should not be left up to the Courts.

(See generally doc. no. 1 ("Petition").)

## II.    DISCUSSION

### A.    Under Strickland v. Washington, Petitioner Bears a Heavy Burden on an Ineffective Assistance of Counsel Claim

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984). See Massaro v. United States, 538 U.S. 500, 505 (2003); United States v. Armstrong, 546 F. App'x 936, 940 (11th Cir. 2013). Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001).

Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691. Indeed, "strategic choices are 'virtually unchallengeable.'" Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998) (citing Strickland, 466 U.S. at 690). "[A] court should be highly deferential to those choices made by defense counsel in the conduct of a trial that are arguably dictated by a reasonable trial strategy." Devier v. Zant, 3 F.3d 1445, 1450 (11th Cir. 1993). To show that an attorney's choice of strategy is unreasonable, a petitioner must show that no competent counsel would have made such a choice. Strickland, 466 U.S. at 690.

Thus, a petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  Id.  "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one."  Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted).  "The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ."  Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995)).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013).  Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.

A petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.  That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice."  Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted).

Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different." Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989). Furthermore, "where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Moreover, in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id.; Stephens v. Sec'y, Fla. Dep't of Corr., 678 F.3d 1219, 1225 (11th Cir. 2012), cert. denied, 568 U.S. 966 (2012). In assessing whether a petitioner has met this standard, the Supreme Court has emphasized the "fundamental interest in the finality of guilty pleas." Hill, 474 U.S. at 58. Thus, a petitioner must prove "serious derelictions" in counsel's advice regarding the plea. Stano v. Dugger, 921 F.2d 1125, 1150-51 (11th Cir. 1991) (en banc) (citations omitted). Therefore, Petitioner must show both that counsel's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that but for counsel's errors, he would have insisted on going to trial. Hill, 474 U.S. at 56-59.

### B.   Petitioner's Guilty Plea Was Knowing and Voluntary

#### 1.   Background

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only

challenge the knowing and voluntary nature of the plea.  United States v. Broce, 488 U.S. 563, 569 (1989).  In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary.  Boykin v. Alabama, 395 U.S. 238, 242-43 (1969).  The Eleventh Circuit has described the requirements for a valid guilty plea as follows:  "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights.  A plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional sense."  United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997).  A guilty plea may be involuntary in a constitutional sense if a defendant is coerced into his plea, if a defendant does not understand the nature of the constitutional protections he is waiving, or "if a defendant has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt."  Id.  Thus, a defendant must receive "real notice of the true nature of the charged crime."  Id.

The Eleventh Circuit has further explained that, for a guilty plea to be knowingly and voluntarily made, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea."  United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (per curiam) (citations omitted).  In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error [under Rule 11 of the court accepting the guilty plea], he would not have entered the plea."  Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

### 2.    Judge Hall's Colloquy with Petitioner Satisfied the Three Core Principles

Judge Hall informed Petitioner in clear terms of the charge to which he was pleading guilty, and Petitioner testified he understood the charge. Rule 11 Tr., pp. 5-6. Judge Hall also provided a detailed explanation of the rights Petitioner would forfeit by pleading guilty, and Petitioner affirmed he understood his decision to plead guilty would result in a waiver of these rights. Id. at 7-9. Petitioner testified that other than the promises the government made in the Plea Agreement, no one made promises to get him to plead guilty, and Judge Hall confirmed Petitioner's decision to plead guilty was not the result of force, pressure, threats or promises other than those in the plea agreement. Id. at 2, 10, 22. Petitioner agreed no one made any "promise, prediction or prophecy" that he would receive a specific sentence. Id. at 15. Judge Hall informed Petitioner of the possible penalty he faced upon conviction. In particular, Judge Hall explained the maximum thirty-year prison term and potential lifetime supervised release term. Id. at 12. Petitioner testified he understood the potential penalties. Id.

When asked, Petitioner stated he understood the charge of production of child pornography and had enough time to discuss the charge with Mr. Saul. Id. at 5. He stated he understood what the government would have to prove for that charge, including that he used a minor to "engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct." Id. at 15. AUSA Lyons told the Court the images in question depicted sexually explicit conduct, and Petitioner said he agreed. Id. at 20-21. Finally, Petitioner also testified he had enough time to discuss the case with Mr. Saul and was satisfied with his services. Id. at 8; see also Plea Agreement, p. 9 ("Defendant believes that his attorney has represented him faithfully, skillfully, and diligently, and he is completely satisfied with the

legal advice given and the work performed by his attorney); id. at 11 ("I have read and carefully reviewed this agreement with my attorney.").

"[S]olemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977); see United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false."); United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (noting that "if the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely"). See also United States v. Wilson, 245 F. App'x 10, 11-12 (11th Cir. 2007) (per curiam) (no prejudice where counsel's deficient advice about possible sentencing implications was "cured" by district court explaining "the consequences of the plea agreement, range of punishment, and sentencing contingencies before accepting [the] guilty plea").

Judge Hall's thorough plea colloquy ensured Petitioner understood both the nature of the charge and the consequences of his guilty plea, and Petitioner was not coerced into pleading guilty. Moriarty, 429 F.3d at 1019. Accordingly, the Court concludes Petitioner entered a knowing and voluntary guilty plea to the production of child pornography charge. Petitioner has not argued, let alone shown, a reasonable probability that but for any alleged error at the Rule 11 proceeding he would not have entered his guilty plea. Dominguez Benitez, 542 U.S. at 83.

The guilty plea bars Petitioner's ineffective assistance of counsel claims in Ground Two regarding conflicts of interest, and the claims in Ground One that attack counsel's performance

leading up to the change of plea hearing, namely I(1), I(2)(A), I(3)(A), and I(4)(A).  These barred claims are also meritless, as explained *infra*.

### C.     The Pre-plea Claims in Ground One Are Meritless

In Ground One, Petitioner asserts counsel provided ineffective assistance in the pre-plea phase due to a variety of failures in investigating, negotiating, and advising Plaintiff of the law.  See generally Petition, pp. 2-13.  Plaintiff never alleges he would have insisted on trial had counsel not made any of these described errors.  Instead, he merely alleges counsel's error "influenced" and placed "undue pressure" on his decision to plead guilty and that he "may have decided" to proceed to trial had counsel not committed these errors.  See Petition, pp. 2-4.  None of these arguments show counsel's representation fell below an objective standard of reasonableness or a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill, 474 U.S. at 59.  These reasons, combined with the Rule 11 analysis above, prove Petitioner entered into a knowing and voluntary guilty plea.  Plaintiff's pre-plea ineffective assistance arguments in Grounds One are thus meritless.  Broce, 488 U.S. at 569.

### 1.     Ground I(1)(A) and I(3)(A)

Petitioner claims counsel told him "sexually explicit," according to the 18 U.S.C. § 1151(a), can range from suggestive, non-nude images to depictions of hardcore sexual acts, which is inconsistent with the definition of sexually explicit in § 2256(2)(A) which requires "lascivious exhibition" of genitals.  Petition, p. 2.  Petitioner contends the evidence against him contained "few, if any" images that meet the statute's definition because no images display sexual contact or sexual acts, and for the images that contain nudity, the genitals are not "lasciviously" displayed or clearly visible.  Id.  Petitioner avers he would have directed

counsel to further investigate the issue had he known the correct definition of sexually explicit. Id.  Petitioner also claims counsel did not review the images, contributing to his misunderstanding of whether the images were sexually explicit.  Id. at 10.

Petitioner's argument is meritless.  First, Judge Hall reviewed the nature of the charges with Petitioner, and Petitioner agreed he (1) understood the charges and (2) understood what the government would have to prove at trial, including that the image forming the basis of Count One satisfied the definition of sexually explicit.  Rule 11 Tr., pp. 5, 15.  Second, the image was sexually explicit under 18 U.S.C. § 2256(2)(A)(v), which defines sexually explicit conduct as "lascivious exhibition of the anus, genitals, or pubic area of any person."  The basis of Count One was a video where Petitioner secretly filmed of a minor girl using the toilet.  The video, recorded from a camera hidden in a vent directly above the toilet, shows the minor victim walk into the bathroom, pull her pants down, and sit on the toilet.  PSI ¶ 21; Rule 11 Tr., p. 20.  There was also similar footage Petitioner recorded of two other minor victims, but they were not included as support for Count One.

Otherwise innocent conduct, such as regular bathroom activities, can constitute "lascivious exhibition" and satisfy the definition of sexually explicit conduct.  See United States v. Holmes, 814 F.3d 1246, 1252 (11th Cir. 2016) ("placement of the cameras in the bathroom . . . was sufficient to create a lascivious exhibition of the genitals or pubic area").  "Sexually explicit" and "lascivious exhibition" do not even require nudity.  For example, in United States v. Hall, the Eleventh Circuit found videos of a minor in a bathing suit that focused on that minor's genital areas created a lascivious exhibition and satisfied the definition of sexually explicit conduct under 18 U.S.C. § 2256(2)(A).  United States v. Hall, 780 F. App'x 710, 713-14 (11th Cir. 2019) (per curiam); see also United States v. Butler, 565 F. Supp. 3d

1244, 1246 (M.D. Fla. 2021) (noting non-nude images can qualify as lascivious exhibition). The key is the intent and actions of the producer, not the victim being filmed, in creating an image or video meant to "arouse or satisfy the cravings of a voyeur."  Holmes, 814 F.3d at 1252 (citing United States v. Wiegand, 812 F.2d 1239, 1244 (9th Cir.)).  As the Eleventh Circuit has explained,

> We can gauge the producer's intent to attract notice to the child's genital or pubic area in order to excite a sexual desire by analyzing the focus of the visual depictions and the areas or attributes to which the producer chooses to draw the viewer's attention. Close focus, zooming, or freeze-framing from a video stream, as well as the angle from which visual depictions are captured, speak volumes about the character of the exhibition which the photographer sets up for himself or like-minded pedophiles

Hall, 780 F. App'x at 714.

Images taken from a hidden camera angled directly at a toilet being used by a minor girl certainly evidences intent to draw the viewer's attention to that minor's genital area in order to satisfy the sexual cravings of like-minded pedophiles.  This is especially so in Petitioner's case, as the video underlying Count One was just one of many pieces of evidence showing Petitioner's sexually perverse intent, including other similar videos and images as well as Kik messages discussing rape fantasies and feeding his daughter semen.  Mr. Saul's advice concerning the definition of sexually explicit was correct, and, regardless, Petitioner cannot now credibly claim he would have probably decided to not plead guilty if he had understood the definition of sexually explicit, as the video in question unquestionably satisfies the definition.  Counsel was not ineffective, and Petitioner was not prejudiced.

### 2.    Ground I(1)(B-D) and I(4)(A)

Petitioner argues counsel erred during plea negotiations by generally using misleading, exaggerated, and false claims to have Petitioner accept the offer, and specifically by (1)

insisting on cooperating with the prosecution in order to preserve acceptance of responsibility credit and (2) telling Petitioner the plea agreement could not contain an agreement concerning the sentence length.  Petition, pp. 3, 11; Response, p. 5.

First, the Court rejects Petitioner's ambiguous allegations of general negotiation error as they lack any detail.  See Oliver v. Wainwright, 795 F.2d 1524, 1531 (11th Cir. 1986) (vague assertions of ineffective assistance "do not warrant further consideration").  Second, counsel's strategic advise concerning how to obtain acceptance of responsibility credit is reasonable and nonprejudicial.  Petitioner has not shown no competent counsel would have made such a choice or that he would still have obtained acceptance of responsibility credit had counsel been more aggressive.

Third, while the plea agreement could have contained an agreement concerning the appropriate sentence or sentencing range under Fed. R. Crim. P. 11(c)(1)(C), the Court is only bound to that sentence or range if the Court accepts the plea agreement.  United States v. Vallejo, 463 F. App'x 849, 851 (11th Cir. 2012) (per curiam).  Similarly, Petitioner was not prejudiced by counsel's negotiation advice because there is no reasonable probability the government would have offered, or Judge Hall would have accepted, an 11(c)(1)(C) agreement.  See McReynolds v. United States, No. CIV.A. 13-00578-WS, 2015 WL 4545653, at *9 (S.D. Ala. July 28, 2015) (explaining petitioner must show court would have approved a 11(c)(1)(C) plea to prevail on ineffective assistance claim).  ADA Lyons stated at the sentencing hearing that the government wanted a sentence at the top of the guidelines range, making an 11(c)(1)(C) agreement highly unlikely.  Sent. Tr., p. 12.  Plaintiff does not show he would have gone to trial but for these alleged errors.

Petitioner's last argument, that counsel erroneously advised him to volunteer to pay $9,000 in restitution, is meritless.  Petition, pp. 3-4.  Petitioner expressly states he would have done nothing differently had counsel properly advised him, and only makes the argument to highlight counsel's ineffectiveness as an attorney.  Id. at 4.

Therefore, Petitioner has not shown counsel's representation fell below an objective standard of reasonableness, or a reasonable probability that but for counsel's errors, he would have received a lighter sentence.

### 3.    Ground I(2)(A)

Petitioner argues counsel refused to explain the sentencing guidelines calculation process or give him a sentencing estimate more specific than the statutory limits.  Petition, p. 4.  Petitioner was left to his own research to guess his potential sentence if he pled guilty, and he underestimated the range.  Id.  Had he known the correct sentence estimate, Petitioner claims he would have insisted on trial.  Id.  This ground has no merit.

First, as discussed, Petitioner attested in his plea agreement at both the change of plea hearing and sentencing, he was satisfied with his counsel's performance.  Plea Agreement, p. 9; Rule 11 Tr., p. 8.  Second, at the change of plea hearing, Judge Hall explained the sentencing guidelines are not mandatory and Petitioner may be sentenced above, within, or below the applicable sentencing range.  Rule 11 Tr., p. 15.  Judge Hall explained that Petitioner would have an opportunity to review and object to the PSI before sentencing, which contained information concerning the maximum sentence and recommended range.  Id. at 13-14; PSI ¶ 79.  At sentencing, Mr. Saul told Judge Hall he had sufficient time to review the PSI with Petitioner and had no objections.  Sent. Tr., p. 3.  Thus, the record shows Petitioner agreed to a guilty plea despite knowing he could receive the maximum sentence.  Any private hope

Petitioner had based on his own research was not due to ineffective assistance of counsel.  Cf. Reeves v. United States, 665 F. App'x 833, 836 (11th Cir. 2016) (counsel not ineffective for failing to advise Petitioner to take favorable plea because Petitioner was aware of potential sentencing exposure without plea).  Petitioner has not shown counsel's representation fell below an objective standard of reasonableness, or a reasonable probability that but for counsel's errors, he would have insisted on going to trial.

### D.   Petitioner Is Not Entitled to Relief on the Ineffective Assistance Claims in Ground Two

For purposes of a § 2255 motion, a conflict of interest can be a basis for ineffective assistance of counsel if Petitioner proves "an actual conflict of interest adversely affected his lawyer's performance."  Cuyler v. Sullivan, 446 U.S. 335, 348 (1980).  This is a fact-specific inquiry requiring a petitioner to "make a factual showing of inconsistent interests or point to specific instances in the record to suggest an actual impairment of his or her interests." Freund v. Butterworth, 165 F.3d 839, 859 (11th Cir. 1999) (citing Smith v. White, 815 F.2d 1401, 1414 (11th Cir. 1987) (internal quotations omitted).  An actual conflict is one that adversely affected counsel's performances, not one that theoretically divided his loyalties.  United States v. Williams, 902 F.3d 1328, 1332 (11th Cir. 2018).  Unlike other ineffective assistance of counsel claims, Petitioner need not prove prejudice so long as there is an adverse effect due to the conflict.  Id. at 1333.

Petitioner alleges three conflicts of interest: (1) all appointed counsel have an inherent conflict of interest because they can earn more as retained counsel; (2) counsel had a specific financial interest in Petitioner's case when the Court ordered $7,500 in legal fees be paid from Petitioner's IRA; and (3) counsel had a personal conflict because of his desire to avoid viewing

the evidence of child pornography in the possession of the government.  Petition, pp. 13-14; Response, p. 11.  First, a conflict of interest does not arise merely because an attorney can make more representing one client than another.  The source and amount of payment are irrelevant.  Second, that the Court required Petitioner to pay some or even all of court-appointed counsel's fees could not have created any conflict of interest, and Petitioner offers no reasonable, logical argument to the contrary.  Third, that counsel had an understandable aversion to looking at the images is irrelevant because, as explained in § II(C)(1), *supra*, there is no question the surreptitious video footage of a minor girl using the bathroom depicts "sexually explicit conduct" for purposes of 18 U.S.C. § 2251 and § 2256(A).  Therefore, Petitioner has not shown counsel's representation fell below an objective standard of reasonableness, or a reasonable probability that but for counsel's errors, he would have insisted on going to trial.

### E.  Petitioner Is Not Entitled to Relief on the Sentencing Ineffective Assistance Claims in Ground One

#### 1.  Ground I(2)(B-E) and (4)(B-C, E)

Petitioner argues counsel was ineffective by failing to "advise the court of the unreasonable nature of the USSG calculations when coupled with the 18 U.S.C. § 2251(a) statutory limits."  Petition, p. 5.  Petitioner does not argue he was sentenced improperly or there was an error in the USSG calculations.  Rather, he believes the sentencing range itself was unreasonable and counsel should have pointed that out during sentencing and advocated for an alternative calculation method for Petitioner's sentence.  Id. at 5-6.

Petitioner has three criticisms of the sentencing range that he faults counsel for not raising.  First, Petitioner contends there are twenty-seven offense levels for violations of §

2251(a), considering all possible scenarios, but only ten are actually available after application of the statutory sentence limits. Id. at 5. Second, Petitioner argues the enhancement in § 4B1.5(b) is unfair and has too much influence because it enhances the sentence from the minimum to the maximum. Id. at 6-7. Third, he avers the average sentence in similar cases is approximately 270 months. Id. at 8-10. On these grounds, Petitioner argues counsel should have attacked the sentence as unreasonable. Petitioner does not dispute he qualified for an enhancement under 4B1.5(b), his sentence was calculated correctly, and his sentence was within the guidelines.

Petitioner cannot show counsel's representation fell below an objective standard of reasonableness. Flyspecking an attorney's arguments with the benefit of hindsight is just as easy as it is unfair. Furthermore, the overall criticism that counsel did little or nothing to advocate for a lighter sentence is untrue. Counsel was engaged and vocal during sentencing, contrary to Petitioner's claims. Petition, p. 11. Counsel argued the conduct underlying the indictment and plea was less severe than in other production cases because Petitioner's victims were unaware he was recording them and other aggravating circumstances were not present. Sent. Tr., pp. 5-7. Counsel argued for a downward departure because defendants in similar or worse cases received one, and in support counsel provided a bench memorandum listing such cases. Sent. Tr, p. 6-8. Counsel also discussed Petitioner's service in the military, his acceptance of responsibility, his spotless criminal record, his willingness to pay restitution, and his cooperation by pleading guilty. Sent. Tr., pp. 4-7. In short, counsel was prepared and persuasive, and his representation at sentencing far exceeded the objectively reasonable threshold required by the Constitution.

Furthermore, Petitioner cannot show Judge Hall would have likely handed down a lighter sentence if counsel had made all of the arguments that Petitioner trumpets.  Sentences within the guidelines range are afforded a presumption of reasonableness, and the party challenging the sentence bears the burden of demonstrating that the sentence is unreasonable. United States v. Butler, 39 F.4th 1349, 1355 (11th Cir. 2022); United States v. Kolligian, 828 F. App'x 655, 657 (11th Cir. 2020) (*per curiam*). Sentences similar to Petitioner' are often found to be reasonable.  See e.g., United States v. Fox, 926 F.3d 1275, 1282 (11th Cir. 2019) (finding 360-month sentence for production of child pornography substantively  reasonable for defendant who molested and photographed granddaughters); United States v. Holt, 408 F. App'x 229, 240 (11th Cir. 2010) (finding 360-month sentence for production of child pornography substantively reasonable for defendant who abused 14-year-old stepdaughter) (*per curiam*).  Indeed, the Eleventh Circuit recently upheld a sentence enhancement under § 4B1.5(b) even after the District Court recognized but did not adjust for a similar argument advanced by Petitioner that the guidelines contain an unfair anomaly where § 4B1.5(b) enhances the sentences for those without prior sex convictions, but not for those with prior sex convictions.  See United States v. Butler, 39 F.4th 1349, 1354, 1356 (11th Cir. 2022).

Critically, Petitioner does not show how pointing out these disparities, anomalies, and alleged inequities found in the sentencing guidelines would have impacted Judge Hall's sentencing.  Judge Hall had the option to sentence Petitioner to anything below the statutory maximum, yet he still chose the maximum.  As Judge Hall explained,

> [W]hat I have read in this Presentence Report which is some of the most disturbing language that I have ever read in a case of this type since I came on the bench over 12 years ago made more disturbing by the fact that this is a father talking about his daughter. The conduct in this case was truly some of the most egregious that I have read and seen in my career.

Sent. Tr., p. 24.  Judge Hall stated this even after counsel made a disparity argument similar

to the arguments Petitioner faults counsel for failing to make.  Judge Hall still chose the

maximum sentence, and Petitioner does not show any further arguments in the same vein

would have likely made a difference.  The chances of a different outcome are no more likely

had Petitioner filed a formal motion for downward departure or reiterated the arguments he

had already made after Judge Hall issued the maximum sentence.  Petition, p. 11; see United

States v. Hoffer, 129 F.3d 1196, 1202 (11th Cir. 1997) ("failure to repeat the objection at the

conclusion of the imposition of sentence will not result in a waiver of that objection").

### 2.      Ground I(3)(B) and I(4)(F)

Petitioner argues counsel should have obtained a psychological evaluation to support

the downward departure request or at least serve as a mitigating factor.  Petition, p. 10.

Petitioner does not claim to suffer from a mental condition but mentions the possibility of

PTSD from his Army service and his addictive tendencies, mentioning also that his family has

a history of psychological issues.  Response, p. 9.  The PSI states, "Musgrove reported no

current or past mental health conditions."  PSI ¶ 60.  Petitioner also faults counsel for not

telling him when the sentencing hearing would be held, which prohibited Petitioner from

having a clergyman speak about Petitioner's faith and rehabilitation efforts.  Petition, p. 12;

Response, p. 10.

There are no compelling, obvious symptoms of psychosis that would have prompted

reasonably prudent counsel to obtain a psychological assessment of Petitioner.  With respect

to the issue of Petitioner's religion, he read a letter to the Court discussing his renewed

Christian faith and repentance, and having a clergyman confirm these same facts would likely

not have made a difference.  See Chandler v. United States, 218 F.3d 1305, 1321 (11th Cir. 2000) (counsel's decision not to pursue character witnesses for mitigation was reasonable).  In general, "counsel's decision as to which witnesses to call at sentencing, if any, 'is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess.'" Sylvin v. United States, 679 F. App'x 975, 976 (11th Cir. 2017) (per curiam) (quoting Conklin v. Schofield, 366 F.3d 1191, 1204 (11th Cir. 2004)).  Here, counsel's decisions were reasonable, and there is no reasonable probability of a different outcome had counsel done exactly as Petitioner contends he should have.  Therefore, Petitioner has not shown counsel's representation fell below an objective standard of reasonableness, or a reasonable probability that but for counsel's errors, the outcome at sentencing would have been more favorable.

### 3.      Ground I(4)(D)

Petitioner claims counsel failed to object when AUSA Lyons made two "clearly erroneous" statements at sentencing that prejudiced the Court against Petitioner.  Petition, p. 11.  Petitioner claims AUSA Lyons said the victims' older age made the conduct worse because they were acutely aware of their victimization at a period in life when they were concerned about popularity and appearance.  Id.  This claim flies in the face, Petitioner argues, of the sentencing guidelines approach that enhances punishment for younger, not older, victims, and furthermore the claim is false because the victims were unaware of his conduct until after his arrest.  Id.  AUSA Lyons also said this was the worst case that she and Agent Godbee had ever worked.  Id. at 12.  Petitioner argues this is false because his cellmate was also prosecuted for child pornography under much worse circumstances, including sex trafficking allegations.  Id.

Petitioner mischaracterizes AUSA Lyons's statements.  She explained to Judge Hall the obvious tragedy of a teenage girl being concerned with a child pornography investigation and the effects of victimization while also attending high school.  See Sent. Tr., p. 14-16.  She explained the case was "one of the worse cases we had because of their age" because had the victims been younger they "may be able to get the assistance to not carry the scars."  Id. at 16-17.  Judge Hall clearly took her statements as opinions of a career prosecutor, though he did agree Petitioner's conduct was some of the "most egregious" he had seen.  Sent. Tr., p. 24.

Last, Petitioner nonsensically argues counsel should have objected to AUSA Lyons' statements concerning the victim's awareness because she "could have avoided them becoming aware of their victimization altogether if she had chosen to."  The contention victims are better off when the criminals are left alone is absurd and undoubtedly would not have worked in Petitioner's favor if advanced by counsel at sentencing.  Thus, counsel had no grounds to object to AUSA Lyons' statements at sentencing, and the proposed objections would have prejudiced rather than benefited Petitioner.  Therefore, Petitioner has not shown counsel's representation fell below an objective standard of reasonableness, or a reasonable probability that but for counsel's errors, the outcome at sentencing would have been more favorable.

**F.    Grounds Three and Four are Procedurally Defaulted and Barred by a Valid Collateral Attack Waiver**

Grounds Three and Four do not allege ineffective assistance of counsel and instead raise a variety of issues ranging from Judge Hall's considerations at sentencing to the constitutionality of child pornography laws.  As Petitioner's plea agreement contains a valid

collateral attack waiver for all arguments other than ineffective assistance of counsel, the Court cannot consider Grounds Three and Four.

### 1.   Grounds Three and Four Are Barred by a Valid Collateral Attack Waiver

It is well settled that waiver of the right to attack a sentence and conviction on direct appeal or by habeas petition is enforceable if the waiver is knowing and voluntary.  United States v. Warner-Freeman, 270 F. App'x 754, 757 (11th Cir. 2008) (*per curiam*); United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001); United States v. Bushert, 997 F.2d 1343, 1345 (11th Cir. 1993); see also Vaca-Ortiz v. United States, 320 F. Supp. 2d 1362, 1364-67 (N.D. Ga. 2004) (applying case law on waiver of direct appeal to waiver of collateral attack by § 2255 motion).  "To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver."  Weaver, 275 F.3d at 1333.  If the government meets this burden, then the waiver is valid and enforceable.  See United States v. Pease, 240 F.3d 938, 942 (11th Cir. 2001) (enforcing waiver provision where defendant was specifically questioned during plea proceedings about waiver); United States v. Howle, 166 F.3d 1166, 1168-69 (11th Cir. 1999); United States v. Benitez-Zapata, 131 F.3d 1444, 1446-47 (11th Cir. 1997).

Here, the plea agreement signed and verified by Petitioner explicitly set forth that he was voluntarily waiving his right to a direct appeal of the conviction and sentence, as well as his right to collaterally attack the same on any ground other than ineffective assistance of counsel.  Plea Agreement, p. 7.  None of the exceptions to the waiver apply because Petitioner's sentence did not exceed the statutory maximum of thirty years total imprisonment or the

advisory Guidelines range as determined by Judge Hall after reviewing the PSI, and the government did not appeal.  Id.  Moreover, Judge Hall reviewed the appeal and collateral attack waiver provision in the plea agreement during the change of plea proceedings and confirmed Petitioner understood and agreed to the terms.  Rule 11 Tr., p. 11.

Petitioner now claims he "had no idea what a collateral attack was, nor did he understand the effect of this waiver."  Response, p. 13.  This claim carries no weight.  First, the Court notes Petitioner is highly educated with a master's degree and a successful career in the Army until his arrest.  PSI ¶¶ 62-69.; see Tarabein v. United States, No. CR 17-00090-KD-B, 2021 WL 5167294, at *12 (S.D. Ala. Nov. 5, 2021) (noting Petitioner's background to refute claim he did not understand effect of collateral attack wavier).  Second, the Court has already explained "solemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings."  Blackledge, 431 U.S. at 74.

The record before the Court demonstrates Petitioner's agreement to the collateral attack waiver was knowing and voluntary.  Therefore, enforcement of this valid collateral attack waiver bars Petitioner's claims in Grounds Three and Four.  See United States v. Martin, 549 F. App'x 888, 889-90 (11th Cir. 2013) (per curiam) (refusing to consider claims of PSI errors based on knowing and voluntary sentence appeal waiver); Carstarphen v. United States, Civ. Action No. 07-0417-KD, 2008 WL 4369010, at *2-3 (S.D. Ala. Sept. 25, 2008) (barring review of claims of prosecutorial misconduct in § 2255 proceeding based on valid collateral attack waiver); Brown v. United States, 256 F. App'x 258, 262 (11th Cir. 2007) (per curiam) (refusing to consider merits of sentencing argument in § 2255 proceeding based on valid

sentence-appeal waiver provision in plea agreement).  Petitioner may not attack his conviction and sentence on any ground other than ineffective assistance of counsel.

> ### 2. Grounds Three and Four Are Procedurally Defaulted Because Petitioner Did Not Raise Them on Direct Appeal

In addition to being barred by the collateral attack waiver, Petitioner's claims in Grounds Three and Four are also procedurally defaulted.  A petitioner seeking collateral relief must clear "a significantly higher hurdle than would exist on direct appeal." Brown v. United States, 720 F.3d 1316, 1333 (11th Cir. 2013) (quoting United States v. Frady, 456 U.S. 152, 166 (1982)).  "Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a § 2255 challenge." United States v. Montano, 398 F.3d 1276, 1279-80 (11th Cir. 2005) (citing Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994)).  "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development." Mills, 36 F.3d at 1055.  In other words, Petitioner may not use this collateral attack as "a surrogate for a direct appeal." Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citation omitted).

The procedural bar to claims which could have been raised on direct appeal, but were not, may be avoided if the petitioner establishes one of two exceptions:  (1) cause for the default and actual prejudice from the alleged error, or (2) a fundamental miscarriage of justice, covering "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Mills, 36 F.3d at 1055-56 (citing Murray v. Carrier, 477 U.S. 478, 496 (1986)).  "Cause" requires a showing of some external impediment that prevented a claim from previously being raised. Weeks v. Jones, 52 F.3d 1559, 1561 (11th Cir. 1995) (citing McCleskey v. Zant, 499 U.S. 467, 497 (1991)).  "[F]utility cannot constitute

cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'"  Bousley v. United States, 523 U.S. 614, 623 (1998) (citations omitted); see also United States v. Bane, 948 F.3d 1290, 1297 (11th Cir. 2020) ("[A] claim is not novel when counsel made a conscious choice not to pursue the claim on direct appeal because of perceived futility, or when the building blocks of the claim were available to counsel." (citations omitted)); Lynn, 365 F.3d at 1235 ("In procedural default cases, the question is not whether legal developments or new evidence has made a claim easier or better, but whether at the time of the direct appeal the claim was available at all.")

To demonstrate prejudice, Petitioner "must shoulder the burden of showing, not merely that the errors at his trial [or sentencing] created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial [or sentencing] with error of constitutional dimensions."  Frady, 456 U.S. at 170.

> In the alternative, a defendant can also overcome the procedural bar created by the failure to appeal if he could [sic] show a fundamental miscarriage of justice; "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."

Montano, 398 F.3d at 1280 (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)).  Actual innocence "applies to a severely confined category:  cases in which new reliable evidence shows it is more likely than not that no reasonable juror would have convicted [the petitioner]."  McQuiggin v. Perkins, 569 U.S. 383, 394-95 (2013).

Petitioner did not appeal "because he was told this was futile given his guilty plea and because he was ignorant of the truth concerning his attorney's misrepresentations."  Response, p. 12.  Because Petitioner did not appeal, Grounds Three and Four are procedurally defaulted.

To avoid the bar to these claims, Petitioner must satisfy the cause and actual prejudice standard set forth above, or he must establish actual innocence.  He cannot satisfy any exception. Petitioner pled guilty and does not deny his guilt, so he cannot claim a fundamental miscarriage of justice due to actual innocence.  Although ineffective assistance of counsel may serve as the necessary cause to address the merits of procedurally defaulted claim, Ward, 592 F.3d at 1157, as discussed in detail *supra*, Petitioner has no valid ineffective assistance claims.  Therefore, Petitioner has procedurally defaulted Grounds Three and Four and does not qualify for an exception.

III.   **CONCLUSION**

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Respondent's motion to dismiss be **GRANTED**, (doc. no. 8), Petitioner's § 2255 motion be **DISMISSED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED AND RECOMMENDED this 24th day of October, 2022, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

30